The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. Welcome everyone to the Fourth Circuit Court of Appeals this morning. We have three interesting cases and Judge Agee and I in particular welcome our friend Judge Hudson who is assisting us today. Madam Clerk, would you call the first case please? Ready to hear arguments in 22-1127 Bestwall LLC v. Official Committee of Asbestos Claimants, Ms. Ramsey. Ms. Ramsey, good to have you with us. Thank you, Your Honor. Good morning and may it please the Court. Natalie Ramsey of Robinson & Call on behalf of Appellant, the Official Committee of Asbestos Claimants. Mr. Herron and I will be splitting the argument this morning for our side. We would each ask the Court to reserve three minutes for rebuttal. Yes, ma'am. Thank you. For the past five years, a nationwide injunction entered by the Bestwall Bankruptcy Court has prevented tens of thousands of cases from proceeding against 128 entities that are not in bankruptcy. Now what, you say tens of thousands. One of these briefs said 64,000. What is, what's the number as far as you know? Your Honor, there were 64,000 cases that were pending against Georgia Pacific and Bestwall before the bankruptcy. Approximately 22,000 of those were active at the time of the filing. Since that time, of course, because of the nature of asbestos injury, there have been additional people who have been diagnosed with asbestos injury and those individuals are also prevented from pursuing their rights because of this bankruptcy. That's correct, Your Honor, but that is not their only source of recovery for claims that are based upon old Georgia Pacific product. It was Georgia Pacific that engaged in the divisional merger that was responsible for the asbestos injury and both of its successors, Bestwall and what's called New Georgia Pacific. So before the bankruptcy, they had a claim against Georgia Pacific. Now they can make a claim against Bestwall. So who's left out? So they can also make a claim against Georgia Pacific under successor liability theories and other theories and those are the theories that they are. I thought Georgia Pacific was no more and it was Bestwall and New GP or something. New Georgia Pacific they could make a claim against based on successor liability for Georgia Pacific and those are the claims that are being processed. Well, if the claim is processed in the Bestwall bankruptcy, why do they have a different claim against New GP? They have a different claim because it's also a successor in interest and under the law, the claimants, the plaintiffs are permitted to pursue their source of recovery from any entity that has liability and New Georgia Pacific, the plaintiff's claim also has liability. But they have one claim. Your argument, I take it, is that they should be able to go after multiple joint tort feasors. That's correct. There are multiple parties that are liable for that one claim. There's only one claim. Right. Absent a bankruptcy, there's no problem with any of that argument. But now you have a bankruptcy. That's correct and the bankruptcy has an automatic stay, which we do not contest, prevents claimants from pursuing in litigation their claims against Bestwall. That automatic stay does not cover non-debtors like New Georgia Pacific. A bankruptcy court is a court of limited jurisdiction. Right, but your injunction here isn't a 362 injunction. It's a 105 injunction. That's correct, Your Honor, and that is one of the reasons that we were contending that the court erred was because it was entered under 105 without any tethering to any other statutory basis as it had to be. 105 is not a roving equity power. 105 has to be tied to another substantive right in the code and this injunction was not tied to such a right. And on that basis alone, we believe because the court specifically said in its decision that it was not evaluating the merits of whether 362 applied or it did not look to Section 524G, the other statutory section that was mentioned in the underlying adversary complaint, the court failed to enter a 105 injunction with proper authority. All we're here for is the injunction, correct? That's correct, Your Honor. We are here solely talking about the exercise of an injunction over the entities that are not in bankruptcy. That's the issue for today. Why don't you tell us a little bit about the jurisdictional issue, which I take it is your main issue. That's correct, Your Honor. So we have five bases for asking the court to reverse. I'm going to address the first three. Mr. Herron will address the second two. The first is that the bankruptcy court based its jurisdiction on contracts that were designed by Georgia-Pacific to create jurisdiction over non-debtors in Bessell's bankruptcy case. The second is that even if it were permissible for Georgia-Pacific to have created that jurisdiction, considered in context, the documents themselves do not support the exercise of related to jurisdiction. Third is the 105 argument that I was addressing before. Fourth, it's a collusive effort. The related to or arising out of jurisdiction, that's a separate issue than what the merits would be on confirmation of the plan. That's why jurisdiction, of course, is necessary for the court to act at all. I have to say, reading through your briefs, it seemed like to me a lot of the issues you raised tended to be more issues that would come up on confirmation of the plan as opposed to a preliminary injunction at this stage. Your Honor, our contention is the bankruptcy court did not have jurisdiction in the first instance to enter this injunction. It is clear that there are issues that the parties are raising on our side regarding the propriety of this bankruptcy case and regarding whether or not there will ever be a confirmable plan. Those are not the issues that we're here on today. Today, we're on two fairly discrete issues. One is subject matter jurisdiction. The second is whether even if the court had jurisdiction, the injunction was entered properly. Turning to our first argument, Georgia Pacific created the contract terms that the debtor then used to argue to the bankruptcy court that it had jurisdiction over the plaintiff's claims against Georgia Pacific. The two documents that the bankruptcy court relied on, the secondment agreement and the plan of divisional merger, include provisions that were crafted to look like they were customary and normal in asbestos bankruptcy cases. They create relationships that are designed to give the artificial appearance that they would support related to jurisdiction. These documents were prepared in connection with a plan to have BestWall file for bankruptcy. BestWall did that 94 days after its creation. The fact that the bankruptcy court relied on those documents, which were, number one, developed in anticipation of the bankruptcy. Number two, have... Isn't there a threshold issue that you can look at even before you get to that point? Because the standard seems to be fairly relaxed at this stage, and that is whether the outcome of another proceeding, all these claims against GP or some other parties, could have any effect on the estate in the bankruptcy, which would seem to be axiomatic. Because if you're litigating in state court in Wyoming, the same claim that would be before the bankruptcy court in the BestWall proceeding, that would have to have some effect on it. So isn't there a nexus there for jurisdiction, at least on the related two-prong, that's independent of these arguments on the contracts? No, Your Honor, there is not, because... All right, why not? Because related to jurisdiction, even though the standard has been broadly stated, if properly analyzed looking at the case law, it really comes down to a question of whether there is a financial impact on the debtor. And here, under the documents that were assigned to me, there is a funding agreement. That funding agreement is an absolute, unconditional, non-recourse obligation to provide all of the money necessary to BestWall for all of its administrative costs in connection with the bankruptcy and for anything it needs, everything it needs, in order to confirm a plan and to create a 524G trust. So you say there's no financial impact on BestWall? There is absolutely no financial impact on BestWall. Well, then it runs in a circle. It's a big circle, because even under the funding agreement, the funding agreement provides that Georgia-Pacific can be called on under the funding agreement to, in fact, pay the indemnity obligation that BestWall purportedly owes to Georgia-Pacific for any liability. It's entirely circular. And in this instance, BestWall argued and the bankruptcy court accepted that Georgia-Pacific has the financial wherewithal to pay 100 percent of that liability. In addition, looking at the funding agreement, it is not conditioned on either a preliminary or a permanent injunction. So there is no, there is no circumstance under which it could, it can harm financially the other creditors for one creditor. So in your view of the case, you would say that new GP would also have to enter into a bankruptcy related to jurisdiction? They would have the benefit of an automatic stay if they filed for bankruptcy, and there would not need to be a question of exercise of jurisdiction. An automatic stay for the debtor is written into the bankruptcy code. It is not written into any other provisions. In fact, even 524G does not have, as part of its ability to obtain a permanent injunction, any provision for a preliminary injunction, even though it was modeled on the John Mansfield case where there was a preliminary injunction. So clearly the design of that statute is the bankruptcy court still must make a determination of related to jurisdiction and propriety to enter the injunction before it provides a preliminary injunction. Here, the bankruptcy court did not do that properly. Here, the bankruptcy court entered an injunction, again, under Section 105, but before you even get to authority to enter the injunction and whether the injunction was improvidently entered, there's a problem with the related to jurisdiction because the bankruptcy court relied on the secondment agreement, and on its face, the secondment agreement does not permit the Georgia Pacific to call the seconded employees back. The seconded personnel are 100 percent obligated to Best Wall, and it is Best Wall's unilateral decision whether or not to excuse those employees. So there could be no distraction if Best Wall says no. With respect to the purported indemnification obligation owing from Best Wall to Georgia Pacific, as I've said, it's entirely circular. The third basis that the court relied on affecting the purpose of the bankruptcy is a standard that does not exist under the case law, and in analogous circumstances where courts have looked at that type of argument in the 11th Circuit and the 5th Circuit in connection with tax cases, the courts there, the 11th Circuit and the 5th Circuit, and then the boundaries of bankruptcy jurisdiction can't be extended to facilitate a particular plan of reorganization. Their argument also arising in jurisdiction. Well, Your Honor, with respect to arising in jurisdiction, there are really... Let me ask you this. Can we reach that question since the district court, the bankruptcy court, well, neither addressed it? Neither did address it, Your Honor. Because it's subject matter jurisdiction, this court probably could make a determination about that, but we... We have an obligation to look at jurisdiction. But we do not believe that the arising in jurisdiction argument is well-founded. And first of all, a claim as arises in a bankruptcy case is based upon no existence of that claim outside of bankruptcy. And so our first position would be the litigation between the plaintiffs and Georgia-Pacific and the other non-debtors arose outside of a bankruptcy. But if you look at it in the context of a use of Section 105, the 105 would have no limiting principle. If the debtor is right about this, then just filing a bankruptcy would give a bankruptcy court nationwide incredible jurisdictional reach for anything that a debtor wanted to do. And that's simply... This is a nationwide injunction that is entered here. I'm sorry? This is a nationwide injunction that is entered here. It is a nationwide injunction that is entered here, and it is extraordinary. As to state and federal courts vote. That's correct, Your Honor. And over tens of thousands of cases where there is a completely... But why would you say it gives the debtor the right to do anything they want to? I mean, it's not unusual in bankruptcy for the bankruptcy court to center all of the claims that relate to the claims that are presented by debtors for creditors in the bankruptcy to be adjudicated in the bankruptcy. That's the whole point of it. So I'm not sure what other than that circumstance would occur here. So, Your Honor, again, with respect to the bankruptcy's jurisdiction over the claims at issue and the ability of FESWL to pursue a reorganization, those are not issues that we are contesting today. What we are saying today is that is separate. Those panoply of rights are separate from related to... The claim that's going to appear in the bankruptcy conducted in all the other 50 states and other places. So you've got exactly the same claim in two spots. One course in the bankruptcy court, one course hither, thither, and yon. So these claims that are adjudicated outside of the bankruptcy, it would seem to me, would have to affect what transpires in the bankruptcy. Your Honor, the key with respect, and of course that statement broadly is true, but that is not the issue on related to jurisdiction. It's analogous, we believe, to the fact that in a bankruptcy case, someone can pursue a right against a guarantor. That action is typically not stayed. It's the same litigation, but there's another party that has liability for that, and that claim can be pursued. Similarly, asbestos claimants often have claims against more than one asbestos defendant. There are no stays for their actions against other asbestos defendants. If they're in a joint and several liability state and they pursue a claim against asbestos defendant X, and asbestos defendant X pays their claim, similarly, it would broadly affect whether they had a claim in the bankruptcy case. But again, why isn't that something that comes up in the course of confirming the plan? Because right now, the debtor has asked for there to be an injunction against those claims, and those claimants have rights that are material, that are being held back from prosecuting against entities that have the financial wherewithal to pay them. And the fact that they no longer are claims in the bankruptcy estate does not affect, hypothetically in this hypothetical, that it doesn't affect the financial ability of the debtor to carry forward in its bankruptcy case and to propose a plan. And that's the crucial determination, as we believe the court correctly decided recently in the Arrow case, the bankruptcy court for the Southern District of Indiana, when it decided that, in connection with the 3M combat litigation, that there was no functional impairment on the debtor by this continued litigation against non-debtors in very similar facts. Thank you very much. You've saved some time. Thank you, Your Honor. Mr. Herron? Good to have you with us, Mr. Herron. Thank you, Judge King. Good morning, Judge King, Judge Agee, Judge Hudson. May it please the Court. My name is Ed Herron. I'm here on behalf of Appellant Sander Esserman. In his capacity as the Court-Appointed Future Claimant's Representative. Your Honor, I'd also like to reserve three minutes for rebuttal. Your Honor, absent from the bankruptcy court's analysis is any limiting principle. I'd like to discuss two. One that's found in Section 28 U.S.C. Section 1359. The other is in 524G itself. Your Honor, 1359 prohibits the improper manufacturing of subject matter jurisdiction, and the bankruptcy court failed to consider this limitation. If federal jurisdiction could be created by assignments of this kind, which are easy to arrange and involve few disadvantages for the ass and oar, then a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties. Such manufacture of federal jurisdiction was the very thing which Congress intended to prevent when it enacted Section 1359. Your Honor, this is a quote from They say that only applies in diversity cases. That's what they say, Your Honor, but that's not what the statute says. The statute is not limited to diversity, and they cite no case for that proposition. Your Honor, the quote I just read was from the Supreme Court 1969 decision in Cramer v. Mills, where, interestingly, they rejected the notion that the legality of a transaction under Texas state law was relevant for the purpose of evaluating the validity of federal jurisdiction. Under 1359, a district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or invoked or joined to invoke the jurisdiction of the court. So they can't manufacture jurisdiction. That's exactly what happens. That's what it says. In any civil action. Right. And the adversary proceeding from which Is a bankruptcy proceeding a civil action? Well, this one is, Your Honor. The bankruptcy court issued the preliminary injunction after the debtor filed an adversary proceeding. An adversary proceeding is a civil action. Obviously, the bankruptcy court is a unit of the district court, and it was through that civil action that Besswell obtained the preliminary injunction, and the bankruptcy court never considered whether Besswell wasn't properly or collusively made. Absent that finding, the majority of the civic created Besswell for a proper business purpose. The bankruptcy court's exercise of jurisdiction over Besswell's civil action is inappropriate. And of course, whether or not Georgia Pacific's corporate restructuring is valid under Texas law is beside the point. Again, that's Kramer versus Caribbean Mills, but this court endorsed that proposition in the Bishop case, which then slid into Lester B. McFadden case. And because this is a transaction between affiliates, Georgia Pacific created Besswell in a boardroom and then filed documents with the Texas Secretary of State. It's subject to heightened scrutiny. But the bankruptcy court didn't even need to apply heightened scrutiny, because Besswell itself admitted that the purpose of this transaction was to manufacture jurisdiction. In its own complaint, it said the purpose of the 2017 restructuring was to seek a resolution of Georgia Pacific's asbestos claims under Section 524G. We believe this basis, the court's failure to apply 1359 in the face of this admission, is a basis for reversal. And then the inquiry could end there. But to the extent the court wants to evaluate the basis of the injunction itself, there are limiting principles found in Section 524G. 524G limits the instances when third-party non-debtors can obtain injunctive relief. And, Your Honor, this case is different from all the 524G cases which have preceded it. A key difference is here it's Georgia Pacific rather than the debtor Besswell who manufactured and sold asbestos-containing products. And, of course, they did it 40 years ago. We dispute whether Georgia Pacific can use Besswell's bankruptcy to obtain a permanent injunction under 524G for itself on these facts. And the Supreme Court and this Court have repeatedly held that success on the merits of the action need to be shown to be by a clear showing and a likelihood of success. Here, the bankruptcy court did not apply the real truth. And I note that Your Honor and Judge Agee agreed on these principles in the Henderson NLRB case. It requires a clear showing on each of the four factors. And it goes to the likelihood of success on the merits of the relief sought and the complaint, which is an injunction, not a successful reorganization. Here, Besswell has no employees. It has no operations. The showing of a successful reorganization of Besswell for purposes of a preliminary injunction is besides the point. And in any event, that is the point on the first winner principle on bankruptcy. Well, Your Honor, I believe it's the, but I believe this court has said in the Microsoft case that when you enter a preliminary injunction, you look at the success of the ultimate relief. And here, it's the permanent injunction they're seeking. If the permanent injunction wasn't the central facet of this case, they wouldn't have required, their whole premise of obtaining a preliminary injunction for Georgia-Pacific is because they want to wrap everything up into the bankruptcy. The injunction here, the permanent injunction available only under 524G, is why Georgia-Pacific created Besswell and then put Besswell on the bankruptcy. Right, but here you just have a preliminary injunction here, not a, this is not a proceeding for a permanent injunction. Your Honor, of course, you're correct on the facts, but I think Your Honor has previously noted that a preliminary injunction sometimes can be more damaging than a permanent injunction if at the end of the day, the party who's obtained the preliminary injunction doesn't succeed on the merits and get the permanent relief which it's seeking. Here we believe the bankruptcy court applied the wrong standard to the wrong issue. A realistic possibility to a successful reorganization rather than a clear showing that Georgia-Pacific would be able, Georgia-Pacific and 127 other co-defendants who are protected by the preliminary injunction, whether all of them ultimately would qualify for relief under 524G and obtain a permanent injunction. Thank you, Your Honors. Thank you. Mr. Francisco. Judge King, and may it please the Court, Noel Francisco for Besswell. Good to have you with us, sir. Thank you, Your Honor. It's good to be here. Judge Agee, as you were getting at, this case isn't really an attack on the bankruptcy court's jurisdiction. It's really an attack on the validity of the bankruptcy itself. But as appellants concede, that issue isn't before you. And given that concession, this is a very straightforward application of A. H. Robbins. The whole point of A. H. Robbins is to say that a bankruptcy court can put a temporary pause on claims against third parties if they're tantamount to claims against the debtors itself. Well, here, the claims aren't just tantamount to claims against Besswell. They are literally the exact same claims. And if I could just quote the bankruptcy court's summary of it, which I think here is undisputed, the claims In the course of doing that, Mr. Francisco, you know, the opposing counsel makes the argument that as a principle, all that would be correct. But they say that this is sort of a charade that the money just kind of goes in a circle and it's simply a means for part of all Georgia Pacific to stay out of bankruptcy. Sure. So if you could respond to that argument and why that doesn't defeat at least related to jurisdiction. Absolutely, Your Honor. And there are basically two responses. The first is that it doesn't really matter, their reliance on the funding agreement and the indemnification, because as the district court made clear, there's relating to jurisdiction wholly apart from the funding agreement for two basic reasons. The first is, and the standard that this court announced is, can the other proceedings that we're seeking to stay have any conceivable effect on Besswell's rights, liabilities, options, freedom of conduct, either positively or negatively? I think that's almost a direct quote out of H. Robbins as to what the standard is. Here, the other proceedings can obviously have an impact on Besswell's liabilities. The whole point of this bankruptcy is to resolve those liabilities under a 520 guarantee trust. But anything that Besswell pays out, they get it back from... Well, Your Honor, I think that's wrong, but I also think... More specific. Yeah. Well, that's what the agreement says. Well, I'll get to that. I think it's wrong. But for purposes of my first part of answering Judge Agee's question, it doesn't matter. Because even if that were right, under the A.H. Robbins test, it has a direct impact on Besswell's liabilities. If they get it back, whatever they spend, there's no impact. Well, Your Honor, the standard under H.H. Robbins is it doesn't have an impact on those liabilities either positively or negatively. The whole idea of... What they're saying, it doesn't have any impact. It goes in a circle. Well, it does. If they pay it out, they get it back. If they pay it up, they get it back. It does. They're wrong on that. But the whole idea of the type of temporary pause is that you have two places where you question the validity of a bankruptcy. You question it at the front end on the motion to dismiss, and you can question it on the back end in the plan confirmation process. In the middle, which is where we are now, the whole idea is you've got a conceitedly valid bankruptcy, and you're creating essentially a bubble around it to give it a chance to accomplish its purpose. So you're beyond questioning the purpose of the bankruptcy proceeding, and you're simply saying... They're sort of saying that Georgia Pacific's not into bankruptcy, but they're getting a benefit out of it. Right. But what we're saying is that for purposes of this appeal, we've got a conceitedly valid bankruptcy in best wall. And the question is, are we going to give best wall a chance to succeed on that conceitedly valid bankruptcy? But I'll also tell you why they're wrong on the funding agreement, Your Honor. It's because it isn't entirely circular. If you look at the language of the funding agreement, it is crystal clear that we cannot turn to the funding agreement until, first, we exhaust any cash distributions that we get from operating subsidiaries to pay for the cost of the bankruptcy, and second, until we exhaust all of our assets to pay for the 524G Trust. And the money that we then get from New GP through the funding agreement never fills in that hole. That hole is gone, and any funding is in addition to it. So they're wrong on that, but respectfully, as the district court found, I don't even think it matters because, first, it has a direct impact on best wall's liabilities, and secondly, this is the other point I was going to make in response to Judge Agee, best wall's employees, and this is their secondment agreement argument, best wall's employees have no choice but to spend their time and attention attending to the claims against New GP precisely because they are the exact same claims against best wall. Because they're the same claims against best wall, that means if those claims are litigated in the tort system against New GP, they'll create issue preclusion problems that will then affect best wall when best wall is litigating similar issues in the tort system, and they'll create evidence that can be used against best wall both in the tort system as well as in the process itself. So those reasons, the liability, the distraction to best wall's employees, and the direct impact that litigation against New GP will have on best wall, those are three reasons why there's clearly a conceivable effect on best wall's rights, liabilities, options, or freedom of action, either positively or negatively, and that's wholly apart from indemnification and funding and all, and the circular, the allegedly circular nature of the funding agreement and all of that. You never even have to touch that, but Judge King, for the reasons I've explained, I think they're wrong on that too. There's also a rising-in jurisdiction here, and none of anything we've been talking about has anything to do with a rising-in jurisdiction. Nobody, the other courts, two other courts, bankruptcy court and district court, didn't address that. Two responses, Your Honor. First, the district court did. It didn't rest its decision on that, but in footnote three of the district court's decision, he does explain why there would be a rising-in jurisdiction. Secondly, it's a jurisdictional issue, so you can reach it yourself. And third, you can also affirm on any alternative ground that's properly presented, which this is. The test for a rising-in jurisdiction... Well, before you get into the rising-in, if we assume, just for argument, that you prevail today on related to jurisdiction, would there be any barrier to the plaintiffs here at confirmation of the plan to raise the same arguments they're raising now as to the inadequacy of the plan? So Your Honor, I want to be careful about what I say because I don't know for sure of the answer, but as I stand here today, I don't think there would be a barrier to raising those arguments. But again, because I don't know, I don't want to commit to that answer. But in the interim, these 64,000 claimants would not be able to pursue their claims in the state and federal courts of this country. Two points, Your Honor. Yes, there'd be a temporary pause, but the second point... And a lot of these people are sick. Your Honor, when we filed our bankruptcy petition in 2017, of the 64,000 claims pending at the time, 75% of them had already been pending for 10 years or more. 55% of them had been pending for 15 years or more. It reflects the fact that the tort system doesn't deal particularly well when it comes to asbestos liability. That's precisely why Congress passed 524G, to create a more equitable system. How many courts are impacted by this injunction? Your Honor, I'm not sure of the number with respect to that, but it's the exact same number of courts that are impacted by the automatic stay as it applies to best law. It would be the trial courts around the country. How would it be the exact same? Because they're the exact same claims. What they've done is they've taken the... The injunction definition of claimants? What I'm saying is that the claims covered by the automatic stay as to best law are literally the exact same claims that they are asserting against new GP. By virtue of the restructuring... Then why do you need this injunction if you had an automatic stay? Because since they can't sue best law, what they've done is they've gone around the country and filed the exact same claims against best law's affiliates, even though those affiliates have no separate and independent liability. Their liability is completely derivative of any liability that best law has, and under the restructuring, all of the liability assigned... You asked the judge to say that the automatic stay covered all this, and in her opinion here, at the end of it, she says she's not addressing the automatic stay question. And Your Honor, that's because what we gave, what we put before the bankruptcy court judge and the district court judge... I'm talking about the bankruptcy court. Yeah, where all of the reasons... You said that the automatic stay took care of it, and well, if it does take care of it, you don't need any of this. No, we asked her for a declaratory... If you don't take care of it, this thing is moot. What we asked her for, Your Honor, was a declaratory judgment making clear that the automatic stay applied, and she held that she didn't have to get to that issue because there were multiple other reasons for entering the exact same stay. That's what makes this such an easy case under H. Robbins. But you're saying that you already had a stay and that this is meaningless. Footnote three on page two of the judge's opinion, she defines or recites the definition of the, quote, best wall of asbestos claims. Do you subscribe to that definition also? Yes, Your Honor. My point, though, is that the automatic stay, by definition, applies to best wall. What they are trying to do here is do an end run around that automatic stay by filing the exact same claims that they cannot file against best wall against best wall's affiliates, New GP and others. And what A.H. Robbins makes clear is that there are multiple ways for you to prevent that type of situation. One way is one of the ways we ask the bankruptcy court to proceed under, which is to declare that this is effectively an application of 362A itself. Another way is to say that it's under the court's relating to jurisdiction and the temporary stay is necessary and appropriate to furthering the bankruptcy proceeding. And yet a third way is to find that this is a proceeding that arises in a Chapter 11 case. All of those ways are simply different ways of getting at the same exact thing. They can't do an end run around the automatic stay by filing the exact same claims against best wall's affiliates that they're barred from filing against best wall itself. And so if I could turn to arising in jurisdiction, it doesn't involve any of the funding agreement or the alleged circular nature of it or anything else. Well, you use the term best wall affiliates, but a lot of these claims are not against an affiliate, as you would understand that in corporate law, as I understand it. They're simply against joint tortfeasors, alleged joint tortfeasors. Yeah, what I mean to say when I say affiliates is these are all part of the same larger corporate family. And more specifically, by virtue of the restructuring. The Georgia-Pacific corporate family. The Koch Georgia-Pacific larger corporate family. And what I mean to say is by virtue of the restructuring, the liability for all of those claims was vested in best wall and not in any of these other corporations. So what they're doing is because they can't sue best wall for those claims, they're filing the exact same claims against these other organizations, as my friend on the other side conceded under some sort of theory of successor liability. Well, it just reflects the fact that what they're trying to do is assert liability that belongs to best wall against these other affiliates. And I'll go back to my general point about A.H. Robbins. Remember, there's a point at the beginning and the end of a bankruptcy case where you can talk about whether this bankruptcy was filed in good faith. When you're where we are now in the middle of a case, the whole point of this protective stay is to say we're going to pause things because we've got a bankruptcy that we're going to assume for the sake of argument is valid. Its purpose is to resolve these tens of thousands of claims in a 524G trust, and we want to give it at least a chance to succeed. That's why we create this bubble around it, to give the parties a chance to successfully resolve these 64,000 plus current claims, plus an untold number of future claims under a 524G trust. And, Judge King, these claims have been languishing in the tort system for decades. Under a 524G trust, they have a chance to succeed. Under our plan, they would all get paid 100 cents on the dollar for every valid claim. They get paid more quickly than they do in the tort system. But the value of the claim has to be determined by a trial or something. Well, Your Honor, and we've got some of the most sophisticated plaintiff's lawyers on the other side, and that goes to the other two protections that are in 524G. But they can't go to trial. We cannot move forward, Your Honor, on any of this unless 75% of them agree to it. That's right in 524G itself. We cannot move forward on any of this until the District Court and the Bankruptcy Court both approve of it as fair and equitable, and they also get a future claims representative, my friend on the other side, to represent the future claimants' interests. That gives us an enormous incentive to put forward a package that 75% plus of them are going to agree to. Because if we don't put forward a generous package that they agree to, we're right back into the soup that we're trying to avoid by virtue of this 524G trust. And towards that end, we have already committed a billion dollars to a qualified trust that will go to funding any 524G plan. So, with all respect, these 64,000 claims have a lot better chance of getting paid off soon under the 524G trust bankruptcy process than they do under the tort system. None of this, with all due respect, has anything to do with the jurisdictional issue that's before you. Here the jurisdictional issue before you is a straightforward application of A.H. Robbins. And turning to arising in jurisdiction, separate from relating to, separate from 324A, arising in jurisdiction, the test that this Court announced in Bergstrom is could the proceeding have any existence outside of the bankruptcy process. Here the sole purpose of the temporary stay is to prevent them from doing an end run around the automatics. If you have the related to jurisdiction or whatever it's called, why do you all keep pointing that it's to move over to the arising in jurisdiction? Well, Your Honor, if the three of you are prepared to tell me that I have relating to jurisdiction, then I won't move on to arising in jurisdiction. No, but you actually started out, I think your brief led off with the arising in jurisdiction. We were simply laying out all of the different bases for jurisdiction. Like I said, if the Court is with me on relating to, I don't really care whether you get to arising in. I noticed that. Yeah. I didn't come over on the pickle boat. I think one of the reasons is that arising in jurisdiction is, you don't have to get into the funding agreement. We thought that was easier. Huh? But we got a case or somewhere that says that that relates to administrative matters within the bankruptcy. Your Honor, I would put you right forward. To the plain text of the statute itself, the plain text of the statute itself, and this is 1334B, the Court has jurisdiction over all civil proceedings arising in cases under Title 11. There's no limitation to administrative matters, and this Court has never so held. It simply recognized that administrative matters are the types of things that arise in bankruptcy court cases. Here, we're simply seeking an end run around the 362A automatic stay. It lasts only for the duration of the bankruptcy proceeding itself. But if you have an automatic stay that covers all this, which is what you said, you don't need any of this. Well, Your Honor, again, All these proceedings are If you are prepared and the panel is prepared to tell me that 362A automatically applies to the claims against New GP and the other affiliated organizations, I'm fine with that. But I want to make sure that if you're not prepared to go that far The bankruptcy court didn't address that in her opinion here. Because the bankruptcy court You all said we have an automatic stay, and that covers this, and she says, I don't have to address this. I'm not going to, and I don't. Sure. I mean, typically, when you put before It's not presented to us, and I've been briefed. Well, Your Honor, I mean, again, jurisdictional. This Court can address it. You can affirm on any alternative ground that's in the record. And frankly, I think we did what litigants often do. They laid before the Court the alternative bases for ruling in their favor. The Court ruled in our favor on one or two bases, and it didn't have to address all of them. There's nothing unique about this proceeding. This is a very straightforward application of a rising Usually, the scenario would have been, I was thinking about this brief, it would have been the judge was right on the related to jurisdiction, but it would also be right to say a rising in. You all went right after the rising in. Your Honor, you know, maybe we could have reordered the brief. We put forth both of the arguments. We think there's relating to jurisdiction for the reasons why the Court said. We also think that there's a rising in jurisdiction because this type of proceeding is unique to bankruptcy. To quote this Court's decision in Bergstrom, and it has no existence outside of the bankruptcy process, its sole function is to prevent an end run around the 362A automatic stay, which is a bankruptcy-specific provision that finds no analog outside of the bankruptcy process. So it is a very straightforward application of a rising in jurisdiction, which is why every bankruptcy court that has addressed the issue, we cite them at page 26 of our brief, has ruled in our favor, and that's certainly the case with respect to every bankruptcy court that has applied Fourth Circuit precedent. Just a couple of additional points, unless there That would be on a 105. Yes. Basis, not a 362 basis. Yes, Your Honor. That would be a rising in is 105 in conjunction with 1334B. That's how this Court understood it in Robbins. I understand the claimant's argument that they disagree that 362 could apply to a party other than the actual debtor. So what they're doing is disagreeing with A.H. Robbins, but A.H. Robbins made a couple of points clear. One, they said that you could apply 362A directly to a non-debtor if there was a unity of interest between the debtor and the non-debtor. We think we have that here, but you don't have to resolve that because, two, it also said you could reach the same You're arguing that the, what do they call new Georgia-Pacific and best of all, are alter egos of one another? No, Your Honor. We're saying that with respect to these claims, there's an identity of interest within the meaning of A.H. Robbins. But two, what we're also saying is that A.H. Robbins made clear you could reach the same result through a combination of jurisdiction under 1334B relating to arising in jurisdiction and then the substantive authority under 105A to enter the injunction. And those two things can be used to essentially extend the 362A protection to non-debtors. It's not a direct application of 362A. It's an application of relating to and arising in jurisdiction combined with the Court's equitable authority set forth in 105A. Here we think this is a very straightforward application of arising in jurisdiction. It's also a straightforward application of relating to jurisdiction. I'm happy to answer any more questions on that, but I would like to briefly address two other issues that my friends raised. The first is their citation to the Arrow case that explicitly rejected the application of Fourth Circuit precedent and it involves separate and independent liability, not the type of liability that we have here. So Arrow simply has no application to a court that is applying Fourth Circuit jurisprudence. And under the Fourth Circuit's case law, this is a pretty straightforward case. Second, this so-called 1359 argument. The statute itself, 524G, specifically contemplates that there are going to be these types of pre-bankruptcy restructurings. What it says is that the 524G channeling injunction explicitly applies to a third party's quote, to the extent such alleged liability arises by reason of the third party's involvement in a transaction changing the corporate structure. So it specifically presupposes this. Put that to the side. Two other points on that. Yeah, but first... You're not arguing that 524G bars a 1359 claim in all circumstances? No, Your Honor. I wouldn't go that far, but that would lead me to my second and third points. The whole point of 1359 is that if you have a transaction, the sole function of which is to create jurisdiction, it has no economic purpose other than to create jurisdiction, generally diversity jurisdiction, then the court can look to that. Here the purpose of the restructuring was not to create jurisdiction under 1334B. It was to facilitate the resolution of tens of thousands of asbestos claims pursuant to a 524G trust. That is a valid business purpose. Jurisdiction under 1334B or the other basis we cite is simply a downstream ancillary consequence of that legitimate business purpose. All of the cases they cite involve transactions that had no other economic substance than to create jurisdiction. We're at the polar opposite of that. And my final point on this is we didn't create jurisdiction. It already existed. I'll give you a hypothetical to prove my point. Suppose I've got a Montana company. I can sue a California company in diversity jurisdiction. I take that Montana company and I divide it into a Montana company and a Nebraska company. Now they can both sue the California company in diversity jurisdiction. I didn't create jurisdiction. It already existed. That's all that you have here. I'm happy to answer any further questions your honors have. No. Thank you very much, Mr. Registrar. Thank you. Ms. Ramsey. Thank you, your honor. So our adversaries contend that the injunction and the restructuring is a good thing. And they talk about a permanent resolution and claimants getting paid 100%. But that's not what this appeals about. We're arguing today that in the purview of a court of limited jurisdiction, the bankruptcy court has to stay within the strict parameters of law. And the law does not provide for a grant of nationwide injunctive relief for these non-debtors on this record. First of all, there are- How many courts are enjoined from proceeding with cases? I don't know how many courts either, your honor. But my understanding is that there were cases proceeding in almost every state court in the country at the time of the bankruptcy. Hundreds. Hundreds. And would cases be also some of them in the federal court system? There were federal court cases as well. Fewer, but there also were federal court cases. But there are cases in the states and federal courts. That's correct, your honor. And they can't proceed. And they cannot proceed. Would there be cases in appeals courts of those states? There were also appeals. They'd be impacted as well, wouldn't they? They were, your honor. That is correct. I mean, this is pretty broad. And how many, and you say 64,000 claimants, none of which can go to trial. That's right, your honor. And none of which can go to trial in a circumstance where- Now, where does that fit in all those numbers that I've pulled out here into an analysis under when are in our authorities for an injunction? So with respect to, so first of all, our first argument is- Number four, number three, which one? Number three and four. And three and five. Three and four. Three and five. So the point is, in order for the court to act, it has to have subject matter jurisdiction. And the issue then, if you agree that the court had subject matter jurisdiction, which we don't concede, then the question is, does the court have authority? And then you get to the question of how the court evaluated the injunctive relief that it was entering. And there are two problems with that. One is the legal analysis of clear showing and not making a determination on the merits of the adversary action as opposed to a standard that really had nothing to do with the adversary action. And the second is whether 105 injunction can be issued in the circumstance. And the law is clear that 105 is not a roving equity. It has to be, it's not a remedy itself. It is designed to augment and protect other substantive rights in the code. And here, the court did not reach any of the, or the other two statutory sections that were mentioned in the complaint itself, and therefore issued a 105 injunction without tethering it to any other provision of the code. And that also requires reversal with respect to its authority. I also want to hit, again, a rising end jurisdiction. Your Honor, to hold that a rising end jurisdiction could mean that any request for relief under section 105, the court would have injunctive authority with respect to, would have subject matter jurisdiction over, extends 105 far beyond anything that has ever been seen in any of these cases. With respect to identity of interest, in the recent case in Patterson v. Malwa from the Virginia District Court, that court stated, and relied on this court's decision and National Heritage Foundation, that a court has to consider identity of interest. And identity of interest, as interpreted in the case law, is whether there's an obligation that would mean that a suit against the debtor risks depleting assets of the estate to the disadvantage of the other creditors. We don't have that here. The funding agreement completely insulates this debtor from any potential harm. And the notion that, again, that a party can come in ahead of time and say, we are conducting this divisive merger in order to provide the opportunity for Besswall to go through a bankruptcy proceeding without putting the enterprise into bankruptcy. That entity can file 94 days later, and the documents were created before Besswall ever existed. The plan of merger was created before it existed. The secondment agreement was created before it existed. It has no business, those documents had no business purpose. But you can raise all these claims at confirmation of the plan, that the plan is inadequate. Your Honor, these are not claims that we're raising against the debtor. These are claims we're raising that go to the fundamental foundation of related jurisdiction. Wait a minute. Your bottom line claim is that we want enough funds to pay all the claimants what they're due. So, if the plan that's proposed, assuming that the lower courts are affirmed here, if the plan that's proposed doesn't do that, that they're not paid out to the full amount, then 75% of the claimants don't have to agree to it. In the bankruptcy case, that is correct, but we believe that the problem with that analysis from our perspective is we don't believe that the bankruptcy court, whatever rights could be given to Besswall, those rights cannot be extended to non-debtors who chose not to file their own bankruptcy under these facts. There simply is not related to jurisdiction. The structure does not ever limit the asset pool available for the reorganization or for the payment of creditors. So, it doesn't impact the debtor. Right, but nothing that would happen here in this particular case is going to limit the amount of recovery to a claimant. That's correct, Your Honor. And because of that, there is no related to jurisdiction, and these lawsuits should be able to proceed outside of bankruptcy. And getting past, again, related to jurisdiction, getting back past the issues of creating jurisdiction, both crafting it under the common law in violation or in contradiction to this court's decisions, and other cases like Verily Historic, where the court has said, the parties may want this and the intention for providing retention of jurisdiction may make sense to them, but you can't create jurisdiction in a federal court. It's a fundamental principle that the Supreme Court has articulated over and over again. So, if you get past creation of jurisdiction under this and under the federal statute and related to jurisdiction, there is still the issue that the bankruptcy court did not apply the correct legal analysis by looking to success on the merits of a 524G injunction under these very unique facts and did not apply an analysis of other code sections upon which 105 injunction could be based. Thank you very much. Thank you, Your Honor, unless you have questions. Thank you. Mr. Herrmann. Good morning again, Your Honors. I just have a few brief points. One, the reference is to A.H. Robbins. A.H. Robbins is completely distinguishable here. It's pre-winter, pre-real truth. It's not 524G. It's not an asbestos case, so it's not subject to the specific provisions of 524G. And A.H. Robbins was the tortfeasor who manufactured and sold the DALCON shields that were at the heart of the underlying tort litigation. In turning to 1359, it was in an enumerated bishop where this court noted the general policy of viewing federal courts of limited jurisdiction where such subject matter jurisdiction should be applied with restraint. And we were careful here in how we phrased our argument. We're not challenging the underlying bankruptcy today. We are challenging the underlying bankruptcy. Challenging is the jurisdiction over the adversary proceeding, which is a civil action, which is within the meaning of 1359. And I'd like to address the hypothetical that my colleague posited about litigation in California and then a defendant in California that splits into Montana. Let's just move that around a little bit. Let's call it state court tort litigation in California. Let's pretend that Georgia Pacific is the defender. And let's pretend that Georgia Pacific spins off BestWall and puts it into Montana, incorporates it in Montana. And then BestWall files a suit in district court, not in bankruptcy court, in Montana district court, seeking to remove the state court litigation against Georgia Pacific to Montana. We would assert under those facts, 1359 applies. Of course it does. That's exactly the type of manufactured jurisdiction that the statute is intended to preclude. The only difference here is that after they incorporated BestWall, they put it into bankruptcy. But it doesn't change the policy considerations underlying 1359. If they wanted to avail themselves of all the good things they're doing for claimants in the bankruptcy case, they could have put Georgia Pacific into bankruptcy. But by creating BestWall, even if it's valid under state law and using that as the vehicle, it implicates the section 1359 analysis. And at a minimum, the bankruptcy court should have undertaken that analysis. Just two more quick points, Your Honor. I think the question that's kind of implicit, the issue that's implicit in many of the questions from the bench is what's the harm? What's the harm to claimants here? Well, it violates, it gives Koch Industries, Georgia Pacific's ultimate parent, improper leverage because it flips the statutory scheme imposed by Congress in 524G. Your Honors have mentioned the 75% vote. Under 524G, non-debtor code defendants are only eligible for an injunction after the vote. The statute is very clear on that. And in fact, it says when claimants are asked to vote on the injunction, the vote solicitation materials must prominently identify that third parties are being protected by that injunction. So the 75% vote was supposed to occur before the injunction, not after. Here, a bankruptcy court, an Article I court, has issued an injunction nationwide of indefinite duration, staying the litigation against non-debtors of at least 64,000 claims. Now, non-debtor Georgia Pacific doesn't need to negotiate for an injunction before the vote. It has less incentive to agree to a fair amount of trust funding. It has little incentive to bring the Besswell Chapter 11 case to a conclusion. When the actual debtor with the financial stake is in bankruptcy, the interest in getting out of bankruptcy are aligned with the claimants. That underlying principle of bankruptcy is absent here. That's one of the reasons the bankruptcy court imposed this injunction five years ago. And we're no closer to being done than we were on day one. Because the bankruptcy court flipped the statutory scheme, removed the incentive for Besswell and Georgia Pacific to conclude bankruptcy. They're happy to keep us at bay. They starve the claimants of payments. They leverage them into voting on a plan that they otherwise wouldn't support. One last point, Your Honors. If this preliminary injunction is appropriate for Georgia Pacific on these facts, then in the Fourth Circuit, a preliminary injunction is available to literally any company willing to file a Certificate of Divisional Merger with the Secretary of State. Numerous companies have already done it in this circuit. Certainty created DVMP in Texas and then put it into bankruptcy in North Carolina. Drain Technology created Aldridge Pumps in Texas and then put it into bankruptcy in North Carolina. Between those two cases, they've obtained preliminary injunctions to protect about 500 non-debtor co-defendants. And in the analysis where those courts cite back to Besswell, they say that temporary injunctions in the Fourth Circuit are routine. I have nothing else, Your Honor, unless you have questions. Thank you very much, sir. We appreciate it. Your appeal will be taken under advisement. Uh, I want to say that, uh, at this point, in the Fourth Circuit, we normally, we, the judges, normally rise and go to the, uh, well in the court and greet the lawyers. Shake their hands and thank them and tell them, tell you how much we appreciate your help. Uh, but we were, we've suspended that procedure. Uh, hopefully not in the near future, we'll, we'll change that rule back. But, uh, maybe next time we'll be able to do that. But we're not going to be able to do that today. But we appreciate your help. It's really good to have all of you here. And, uh, that said, Madam Clerk, we'll take a brief break. This honorable court will take a brief recess.
judges: Robert B. King, G. Steven Agee, Henry E. Hudson